# Pittsburg's Appeal.

| 79 | 317 |
|---|---|
| 154 | 28 |
| 79 | 317 |
| 160 | 287 |
| 79 | 317 |
| 212 | ⁴541 |
| 79 | 317 |
| 217 | ⁴218 |

1. The Act of May 10th 1871 authorized Pittsburg to admit into the city adjacent territory, on the petition of at least three-fifths of the taxable inhabitants of the district desiring to be admitted, accompanied by an affidavit of a citizen of the district, that the signers were taxable inhabitants in it, and were as he believed three-fifths of the taxable inhabitants, and on the presentation of the petition might adopt an ordinance admitting such district. Held, that the jurisdiction of the councils attached only on the petition of three-fifths of the taxable inhabitants, and without this the action of councils annexing a district was void.

2. An affidavit to a petition, in the form and stating the facts required by the act, is not conclusive of the facts stated in it.

3. Ex parte affidavits are usually but the ground of preliminary or interlocutory action; but, unless provided by Act of Assembly or rule of court, are never the ground of a final judgment.

4. A private citizen may maintain a bill to restrain the city from carrying into operation an ordinance to annex territory to the city.

October 14th 1875. Before AGNEW, C. J.. SHARSWOOD, WILLIAMS, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Appeal from the Court of Common Pleas, No. 2, of Allegheny county : In Equity : Of October and November Term 1875, No. 132.

The bill in this case was filed November 29th 1873, by James Kelly against the city of Pittsburg and others, officers of the city, to restrain them from exercising municipal authority over any

part of Wilkins township, in pursuance of an ordinance passed by the councils of the city for that purpose.

By the first section of an Act of Assembly, passed May 10th 1871, Pamph. L. 718, it was provided " that the city of Pittsburg shall be and is hereby authorized to admit into said city, any borough, townships or portion of townships in the county of Allegheny, adjacent to said city, upon the following conditions : In case of any township or portion thereof, the application shall be made by a petition of at least three-fifths of the taxable inhabitants of the township or the portion thereof desiring admission ; and if only a portion of said township desires to be admitted, the petition shall set forth the boundaries of the district desiring admission ; the said petition shall in either case be accompanied by an affidavit of a reputable citizen of said district, that the persons signing the same are taxable inhabitants, and constitute, as he verily believes, three-fifths of all the taxable inhabitants of said district. And upon presentation of the petition as above provided, it shall be lawful for the councils of the said city of Pittsburg to pass and adopt, in manner provided by law, an ordinance admitting said township, or portion thereof, into said city."

On the 9th of December 1872, a petition purporting to be signed by 216 taxable inhabitants of Wilkins township was presented to the councils of Pittsburg; the petition was accompanied by the affidavit of Henry Swift, " a reputable citizen of the district desiring admission," that the petitioners were taxable inhabitants, and as he believed constituted " three-fifths of all the taxable inhabitants of the district."

The matter was referred to the city solicitor, who gave the councils his opinion in writing that the affidavit of Swift fully complied with the provisions of the Act of May 10th 1871 ; he further advised that if a remonstrance were filed denying the allegations of the petition, the councils should appoint a committee to ascertain the facts. A remonstrance having been filed, councils appointed a committee as advised. A majority of the committee reported in favor of granting the prayer of the petition ; the minority reported adversely. A second committee was appointed who reported unanimously recommending the passage of the ordinance as prayed for.

On the 12th of May 1873, an ordinance was passed incorporating as the Thirty-seventh ward of the city of Pittsburg, a portion of Wilkins township, whose boundaries were particularly set out in the ordinance.

The plaintiff averred in the bill, the passage of the ordinance, the purpose of the city to exercise municipal authority over the district proposed to be annexed to it ; that he was a citizen residing within that district and the owner of a large body of land in it ; that of the territory included in the boundaries, a very large

proportion was agricultural, used for farming purposes, and was sparsely populated; he denied that three-fifths of the taxable inhabitants of the district had petitioned councils to admit the territory described as part of the city of Pittsburg, and averred that the ordinance was void.  He also charged that the action of councils in the premises was collusive, false and fraudulent.

The city in its answer, averred, amongst other things, that the committees of councils to whom the matter was referred, after "a very full and fair examination of the facts in the case, hearing parties in favor of and opposed to said annexation, and James Kelly, the plaintiff in the bill, appearing before them, with counsel, did, on February 17th 1875, report that the requisite three-fifths of the taxable inhabitants of said district had petitioned for annexation," and that in pursuance of that report the ordinance was enacted by the councils.

They denied all collusion and fraud.

A replication was filed, and J. M. Stoner, Esq., was appointed examiner and master.

He took a large amount of testimony, the most of which was taken with reference to the allegations of the bill that three-fifths of the taxable inhabitants of the district did not sign the petition, and that action of the councils was collusive and fraudulent.

The master, after an elaborate discussion of the testimony, and the law bearing on the questions, reported : * * *

"The fact that three-fifths of the taxable inhabitants of the district, on December 9th 1872, had not signed the petition for its admission, was admitted by the counsel for the respondents.  They, however, contended that the complainant was not entitled to the relief sought, and that he had not pursued the appropriate remedy. It was said the writ of quo warranto was the form of remedy that should have been adopted. * * *

" Whilst admitting also that where the law requires an application by a given proportion of the taxable inhabitants of a district, to authorize certain measures with respect to such district by any tribunal, and particularly by a special tribunal, as the councils of a city, the fact that such proportion have petitioned is essential to give jurisdiction; and, unless that fact can be established, the whole proceedings are void from beginning to end, * * * and that the Act of May 10th 1871 made a petition by the prescribed number indispensable to give the councils jurisdiction; they alleged that the affidavit of Henry Swift, made in compliance with that act, was, by the terms of the act, a judicial finding that three-fifths of the taxable inhabitants of the district had signed the petition, and that the complainant was concluded by it. * * *

" The Act of May 10th 1871 contains no provision that the affidavit prescribed by it shall conclude any one as to the question whether three-fifths of the taxable inhabitants have petitioned.

And, in the absence of an express provision to that effect, it would seem to be an unwarranted construction of that act, to hold that the mere affidavit of a reputable citizen that the required three-fifths had, as he believed, petitioned for the admission of the district, precludes all inquiry into the fact itself, or as to the accuracy of the affiant's information. Certainly if that was contemplated by the legislature, it should have been clearly expressed. * * * It must be assumed that when the legislature provided that the application for admission into the city by any adjoining district should be made by a petition of at least three-fifths of the taxable inhabitants thereof, it intended to give parties interested the benefit of the restriction thereby implied, by denying the councils the power to incorporate such district with the city upon the application of a less number; and it is inconsistent with this intention to suppose that it has given to the ex parte affidavit of a single individual the effect of a judicial finding that the requisite number have applied. If this had been contemplated, it is fair to infer, not only that it would not have been left to inference, but that the act would have contained some provision for notice to parties interested. * * *

" The master, therefore, holds that the affidavit of Henry Swift, filed with the councils of the city of Pittsburg, is not to be treated in these proceedings as a judicial finding of the facts alleged in it; that the petition presented to said councils was not a compliance with the Act of May 10th 1871, and did not confer jurisdiction upon them; and that the ordinance passed by said councils, on the 12th day of May 1873, in pursuance of said petition, is null and void."

The following special findings of facts are submitted by request of counsel:—

1. That on the 9th day of December 1872 a petition was presented to the councils of the city of Pittsburg for the admission of Wilkins township into the city of Pittsburg, accompanied by the affidavit of Henry Swift, a reputable citizen of the district; that the persons signing the same were taxable inhabitants of said district, and constituted, as he verily believed, three-fifths of all the taxable inhabitants of that district.

2. That said affidavit was made by said Swift, after comparison of said petition with the tax duplicate of the township, and after consultation with certain persons whom he believed to be well-informed citizens of the district, and was made in good faith and in full belief that the facts set forth were true.

3. That said petition was referred by councils to the city attorney, who advised that it was regular in form.

4. That councils afterward referred it to a committee to ascertain the fact whether said petition was signed by three-fifths of the taxable inhabitants of the district, which committee heard the evi-

dence offered by petitioners and remonstrants, the complainant in this case being present at some of the meetings, and represented by counsel, and after several meetings, and a full consideration of the matter, reported to councils that said petition was signed by the requisite number of the taxable inhabitants of the district.

5. That it was again referred to a second committee, by whom a similar report was made.

6. That councils afterwards passed an ordinance admitting said districts.

7. That the action of councils and its committees was had in good faith, and was not fraudulent or collusive.

8. That on the 9th day of December, A. D. 1872, the number of taxable inhabitants within the limits of said district was 428.

9. That the required number of petitioners, as provided by the Act of May 10th 1871, is 257.

10. That the whole number of petitioners, who are taxable inhabitants, is 205, showing a deficiency of fifty-two.

11. That the complainant, and a considerable number of other taxable inhabitants of said district, presented remonstrances against the annexation of said district to the said councils of the city of Pittsburg, prior to the passage of said ordinance.

12. That the committees of said councils had before them the petition for the admission of said district into the city, a list of taxable inhabitants made by Henry Swift, and another list of taxable inhabitants made by John Rice; and that there are on said petition thirty-three names not on Swift's list, and there are on Rice's list fifty-one names not on either said petition or said Swift's list.

13. That said councils did not order a poll of said district, but that the said list of John Rice was made with their permission and at their request.

14. That there is no evidence before the master that any municipal improvements have been made in said district by the city of Pittsburg.

15. That said district contains about 1500 acres of land, of which about 1000 acres are used and occupied as farm land; that a portion of said farm lands lie between the villages of Wilkinsburg and Edgewood; and that the value thereof, as real estate, depends not so much upon their adaptation to the purposes of agriculture as upon their proximity to the city of Pittsburg.

The master recommended the form of a decree directing an injunction against the city.

Exceptions were filed to the master's report, which were overruled by the court, who decreed:—

"That the ordinance of the city of Pittsburg, entitled an ordinance to provide for the admission into the city of a portion of Wilkins township, passed by the councils thereof, on the 12th day

29 P. F. Smith—21

of May, A. D. 1875, is null, void and of no effect; that a writ of injunction issue against the defendant, the city of Pittsburg, perpetually restraining the said city from levying taxes upon the lands of the plaintiffs mentioned in the bill, and situated in that part of the township of Wilkins described in the bill, and from collecting any city taxes assessed thereon, and restraining the said city of Pittsburg from exercising corporate or municipal authority, in pursuance of the aforesaid ordinance, over any part of said Wilkins township described in the plaintiff's bill; that the bill be dismissed as to all the defendants, other than the city of Pittsburg, and that the defendants, the city of Pittsburg, pay the costs of suit," &c.

The city of Pittsburg appealed to the Supreme Court, and assigned this decree for error.

*J. F. Slagle* and *G. P. Hamilton*, for appellants.—The whole city of Pittsburg is interested in this question; the relator has no interest except in common with other citizens, and therefore has no standing in this proceeding: Heffner *v.* Commonwealth, 4 Casey 108; Commonwealth *v.* Allegheny Bridge Co., 8 Harris 185; Murphy *v.* Farmers' Bank, Id. 415; Commonwealth *v.* Farmers' Bank, 2 Grant 292; Commonwealth *v.* Cluley, 6 P. F. Smith 279; Smith *v.* McCarthy, Id. 359. The complaint is the usurpation of a municipal franchise and the remedy is by quo warranto: 2 Dillon on Mun. Corp., sects. 713, 716, 718. Under the act the power of the city to take in adjacent territory is full; the mode of exercising the power is in affirmative language; the directions of the act were strictly complied with, and when the petition was presented to councils their jurisdiction attached: Bladen *v.* Philadelphia, 10 P. F. Smith 464; Pittsburg *v.* Coursin, 24 Id. 401. When a statute provides a mode of proving a jurisdictional fact, none other can be resorted to: Slable *v.* Fairchild, 3 N. Y. 41.

*S. Schoyer* and *M. W. Acheson* (with whom was *T. M. Marshall*), for appellee.—Where there is an adequate remedy in equity, it is a sufficient objection to proceeding by quo warranto: High's Extraordinary Legal Remedies, sects. 617–619; Commonwealth *v.* Allegheny Bridge Co., 8 Harris 189; Ewing *v.* Thompson, 7 Wright 373; Kerr *v.* Trego, 11 Id. 295; Devore's Appeal, 6 P. F. Smith 164; 2 Dillon on Mun. Corp., sect. 75, *et seq.*, and cases there cited. The plaintiff has an interest co-extensive with his injury. The injury is against each of the taxable inhabitants of the district; that they and their property are to be subjected to the burdens of municipal control, and he avers that he is the owner of property within that district; in this aspect the bill is sustainable: Washington Avenue, 19 P. F. Smith 352; Robb *v.* Barlow, 8 Id. 338.

Mr. Justice GORDON delivered the opinion of the court, January 6th 1876.

Under what authority does the city of Pittsburg assume to have acted in annexing the territories of an adjacent municipality to itself? This is an unusual and extraordinary assumption, and in order to justify it a warrant from the supreme power in the state must be shown.

No presumption can be invoked in favor of such a power, for it is strange and unique, and unless some legislative grant, containing it in terms, is produced, we must pronounce the exercise thereof, in the present case, a mere usurpation.

For such warrant we are referred to the Act of May 10th 1871, by which it is provided, *inter alia*, "That the city of Pittsburg shall be and is hereby authorized to admit into said city, any borough, township, or portion of township, in the county of Allegheny, adjacent to said city, upon the following conditions: 'In case of any township, or portion thereof, the application shall be made by a petition of at least three-fifths of the taxable inhabitants of the township, or portion thereof, desiring admission, and if only a portion of said township desires to be admitted, the petition shall set forth the boundaries,' &c. The said petition shall, in either case, be accompanied by an affidavit of a reputable citizen of said district, that the persons signing the same are taxable inhabitants and constitute, as he verily believes, three-fifths of the taxable inhabitants of said district; and upon presentation of the ordinance or petition, as above provided, it shall be lawful for the councils of the said city of Pittsburg to pass and adopt, in manner provided by law, an ordinance admitting said borough, township, or portion of any township, into said city." Now, by the provisions of this act, there is one condition under which the power of the city attaches, and only one; that is, the petition of at least three-fifths of the taxable inhabitants of the territory intended to be annexed. Without this the action of the city councils in the premises is *ultra vires* and void. But the auditor finds, *nemine contradicente*, that three-fifths of the taxable inhabitants within the territory, in this case to be annexed to the city, did not petition for such annexation. This fact being ascertained, it is an end of the controversy, for the city councils, under such circumstances, had no power to do that which they attempted to do. A failure of the condition involved a failure of their jurisdiction. But it is argued that the affidavit required by the act is conclusive of the facts stated in it; among others, that the petition did contain the names of three-fifths of the taxable inhabitants of the territory to be annexed. This allegation would have force if the statute so provided, but it does not. Ex parte affidavits are, at best, but a very weak kind of evidence, and generally form but the ground of some preliminary or interlocutory action, but are never, unless it be especially so pro-

[Pittsburg's Appeal.]

vided by Act of Assembly or rule of court, the foundation for final judgment or decree. So in this case, the affidavit was primâ facie evidence that the petition was what it purported to be, an expression of the desire of not less than three-fifths of the taxable inhabitants of a portion of Wilkins township for annexation to the city of Pittsburg; and the councils might, under such warrant, proceed with any preliminary action necessary to ascertain the main fact upon which the validity of their final action must depend. To give it a force beyond this, would be to raise, by implication from the act and a forced construction of it, evidence on which to rest a power such as can only be derived from the strict letter of the statute itself: Borough of West Philadelphia, 5 W. & S. 281; Borough of Little Meadows, 4 Casey 256; Devore's Appeal, 6 P. F. Smith 163; Pittsburg v. Walters, 19 Id. 365; Olds v. City of Erie, *postea* p. 380.

The other question—the right of a private citizen to maintain a bill such as that upon which this case is founded—is hardly open for argument. So many are the cases in which such bills have been sustained that one might suppose this matter to be no longer open for debate. It was held, in Sharpless v. The Mayor, &c., 9 Harris 147; Moers v. Reading, Id. 188; Page v. Allen, 8 P. F. Smith 338; and more recently in Wells et al. v. Bain et al., 25 P. F. Smith 39, that the interest of a taxpayer, when money is to be raised by taxation, or expended from the treasury, is sufficient to entitle him to maintain a bill to test the validity of the law which proposes the assessment or expenditure. If, then, such an interest be sufficient to enable one to test the validity of an election law, which, at most, could increase his tax but to a trifling degree, a fortiori, shall one, like the plaintiff, who is threatened by most burdensome impositions, have the power thus to inquire into the right by which the councils of Pittsburg propose to act in subjecting his person and property to their jurisdiction for the purposes of municipal government and taxation.

Appeal dismissed, decree affirmed, and appellant ordered to pay costs.