Sample *v.* Pittsburg.

*Constitutional law—Local legislation—City of Pittsburg—City of Allegheny —Act of April 20, 1905, P. L. 221.*

The act of April 20, 1905, entitled, "An Act providing that where two cities are contiguous, and in the same county, the smaller may be annexed to the larger, prescribing the method of proceeding and the effect of annexation; providing for the division of such enlarged cities into wards, for the apportionment of common council, and for the indebtedness of such cities," violates article III, section 7, subdivision 2, of the constitution, which provides that the general assembly "shall not pass any local or special law regulating the affairs of counties, cities, townships, wards, borough or school districts," inasmuch as the only two cities in the commonwealth that "are contiguous and in the same county," are the cities of Pittsburg and Allegheny, and the clear intent of the act is to legislate locally for them alone. In determining that the act is unconstitutional

212     533
217     233
d 32 SC ¹222
e 32 SC ¹225

212     533
34 SC ¹ 78
34 SC   641

212   533
227   ¹557

the court will consider as without merit the contention that some time in the future there may be two other cities which may become contiguous and in that event can be consolidated under the provisions of the act.

Potter, J., dissents.

Citizens and taxpayers of Allegheny City may maintain a bill in equity to restrain the city of Pittsburg and its municipal officers from taking any proceedings under the act of April 20, 1905, to annex the city of Allegheny to the city of Pittsburg.

A statute providing for the annexation of one city by another is a law "regulating the affairs" of cities within the meaning of article III, section 7, subdivision 2 of the constitution of Pennsylvania.

Argued May 10, 1905. Bill in equity, No. 117 Miscellaneous Docket by Thomas G. Sample, Caspar C. Heckel and John M. Allen v. The City of Pittsburg, a municipal corporation, and William B. Hays, Mayor, James S. Wrightman, President of Select Council and R. B. Ward, President of Common Councils of the City of Pittsburg. Before Mitchell, C. J., Dean, Fell, Brown, Mestrezat, Potter and Elkin, JJ.

Bill in equity to restrain defendants from taking any proceedings under the act of assembly, approved April 20, 1905, to annex the city of Allegheny to the city of Pittsburg.

*William A. Stone, Harvey Henderson* and *W. C. Gill,* for plaintiffs.—This bill classifies or attempts to classify by location the cities that may be annexed or consolidated. "Classification which is grounded on no necessity and has for its sole object the evasion of the constitution, will not be encouraged:" Scowden's Appeal, 96 Pa. 422; Ayars's Appeal, 122 Pa. 266.

The Cook law is local and special legislation, and is prohibited by article III, section 7, of the constitution: Frost v. Cherry, 122 Pa. 417; Morrison v. Bachert, 112 Pa. 322; Com. v. Patton, 88 Pa. 258; Scowden's App., 96 Pa. 422; Blankenburg v. Black, 200 Pa. 629; York School Dist's. App., 169 Pa. 70; McCarthy v. Com. ex rel., 110 Pa. 243; Ruam Street, 132 Pa. 257; Wyoming St., 137 Pa. 494; Zeigler v. Gaddis, 44 N. J. L. 363; State v. Newark, 53 N. J. L. 4 (20 Atl. Repr. 886); People v. Knopf, 183 Ill. 410 (56 N. E. Repr. 155).

*Wm. B. Rodgers,* with him *T. D. Carnahan,* for defendants, cited: Gilchrist v. Strong, 167 Pa. 628; Blankenburg v. Black, 200 Pa. 629.

*A.. Leo Weil,* for intervenors, Pittsburg chamber of commerce and petitioning registered voters of Pittsburg and Allegheny.

OPINION BY MR. JUSTICE MESTREZAT, June 22, 1905 :

This is a bill filed in this court by the plaintiffs, who are citizens and taxpayers of Allegheny City, to restrain the defendants, the city of Pittsburg and William B. Hays, mayor, James S. Wightman, president of select council, and R. B. Ward, president of common council, from taking any proceedings to annex the city of Allegheny to the city of Pittsburg under the provisions of an act of assembly, commonly known as the " Cook law," entitled " An act providing that where two cities are contiguous, and in the same county, the smaller may be annexed to the larger ;. prescribing the method of proceeding and the effect of annexation ; providing for the division of such enlarged cities into wards, for the apportionment of common council, and for the indebtedness of such cities," approved April 20, 1905, P. L. 221.

It appears from the averments of the bill that the city of Pittsburg through its mayor and councils have instituted proceedings in the court of quarter sessions of Allegheny county to have the city of Allegheny annexed to the city of Pittsburg under this act of assembly. The bill avers, inter alia, that the two cities are cities of the second class, located in Allegheny county, and are separated from each other by the Allegheny river and the Ohio river, both navigable streams ; " that the said two cities of Pittsburg and Allegheny are the only two contiguous cities in the state of Pennsylvania, and are the only two cities in any county in the state that are contiguous ; that there is no other locality in the state of Pennsylvania where there are two cities as classified under the laws of Pennsylvania, nor is there any other locality in the state where any borough or township is contiguous to a city that can be annexed thereto under the present laws of the state of Pennsylvania except by a majority vote of the electors of said borough or town as provided by the constitution of Pennsylvania ; " and that " the Cook law, under which the defendants are proceeding, is unconstitutional because prohibited by article III, section 7, subdivision 2 of the constitution, which provides that the general

assembly shall not pass any local or special law regulating the affairs of counties, cities, townships, wards, boroughs or school districts." It is further averred that "the Cook law is a local law because its provisions can only apply to one locality, namely, the mouth of the Allegheny river, where it empties into the Ohio river, and for some distance above and below its mouth; that there is no other locality in the state of Pennsylvania to which the Cook law can apply, and it was the intention of the legislature that it should only apply to this locality; that the law is special and class legislation, and is unconstitutional." The defendants filed an answer in which they denied that the act in question is unconstitutional and aver, inter alia, as follows : " It may be that the cities of Pittsburg and Allegheny are the only two contiguous cities of the state, situate in the same county; but it is submitted that the time is not far distant when contiguity will exist as to the boundaries of other cities of the state, within the meaning of the act of the general assembly, approved April 20, A. D. 1905, . . . . and that in the very near future the city of Pittsburg and the city of McKeesport, both of which are in Allegheny county, will be in all probability contiguous."

The first section of the act of 1905 provides, inter alia, that where two cities, situate in the same county, are or may be contiguous to each other, the city having the smaller population, as shown by the last preceding United States census, may be annexed to the city having the larger population, as shown by the said census. It is further provided in this section that " for purposes of this act, cities separated by a stream, river or highway shall be included under the term contiguous." The act then, in several sections, provides in detail the proceedings which shall be taken to carry it into effect.

The subject of this statute is the annexation of one city to another, and it requires no argument to show, and we understand it is conceded, that it must be regulated by general legislation. A careful consideration of the act, however, convinces us that it was not intended to be general in its operation throughout the state and that it clearly offends against sec. 7 of article III of the constitution of 1874 which provides that " the general assembly shall not pass any local or special law . . . . regulating the affairs of counties, cities, townships,

wards, boroughs or school districts." We do not deem it necessary to enter into a discussion of the power of the general assembly to classify cities for the purposes of legislation or the multitude of cases decided by this court on the subject. We are concerned here, not with the subject of classification of cities and whether the legislature in enacting the statute in question has transgressed the constitution in that respect, but simply whether the act is local or special legislation in contemplation of the constitutional provision prohibiting such legislation.

This section of the constitution has frequently been the subject of interpretation by this court. Commonwealth v. Patton, 88 Pa. 258, involved the constitutionality of an act of assembly entitled : " An act to provide for the holding of courts in certain cities of this commonwealth." The act required that in all counties containing a certain population and having a city with a certain population, situate at a certain distance from the county seat, the judge of the courts of the county should hold a session of court in such city after every regular term of court for the county. This court held the act to be special legislation and in conflict with article III, sec. 7 of the constitution. The trial judge in that case found that Crawford county was the only county to which the act could apply at that time. Mr. Justice PAXSON delivering the opinion says (p. 260) : " This is classification run mad. Why not say all counties named Crawford, with a population exceeding sixty thousand, that contain a city called Titusville, with a population of over eight thousand, and situated twenty-seven miles from the county seat? Or all counties with a population of over sixty thousand, watered by a certain river or bounded by a certain mountain? There can be no proper classification of cities or counties except by population. The moment we resort to geographical distinctions we enter the domain of special legislation, for the reason that such classification operates on certain cities or counties to the perpetual exclusion of all others. . . . That is not classification which merely designates one county in the commonwealth, and contains no provision by which any other county may, by reason of its increase of population in the future, come within the class." A subsequent and similar act intended to accomplish

the same result, applying to counties and cities of the future as well as of the present, was also declared unconstitutional in Scowden's Appeal, 96 Pa. 422. Justice PAXSON again delivering the opinion says (p. 425) : " It is no part of our business to discuss the wisdom of this legislation. However vicious in principle we might regard it, our plain duty is to enforce it, provided it is not in conflict with the fundamental law. It requires but a glance at the act to see that it is an attempt to evade the constitution. It is special legislation under the attempted disguise of a general law. Of all forms of special legislation this is the most vicious. . . . The Act of June 12, 1879, P. L. 174 (the act then under consideration), makes no attempt at the classification of cities. It is merely an effort to legislate for certain cities of the fifth class to the exclusion of all other cities of the same class. That is to say, it refers only to cities of the fifth class which are situated in a county having a population of sixty thousand. . . . Classification which is grounded in no necessity and has for its sole object an evasion of the constitution, will not be encouraged."

McCarthy v. Commonwealth, 110 Pa. 243, involved the consideration of an act providing for payment of salaries instead of fees to county officers and requiring the officers to pay the fees to the treasurer in counties containing a certain population. The act was held to be special legislation and void. In delivering the opinion, Mr. Justice GORDON says (p. 246): " But by what process of reasoning is this legislation, which has selected for its operation three or four counties from all those composing the commonwealth, to be justified? Is the justification to be found in the well-recognized legislative power of classification? We think not. It is admitted that classification, even where not specially recognized by nature, custom, the laws of trade, or the constitution, must, in certain cases, be adopted ex necessitate, as in the case of cities, under the Act of May 23, 1874, P. L. 230. . . . There is here, however, a new and complete classification, and not a mere cutting out of one or more cities, designated by population, from the general class, and in this the act of 1874 is distinguishable from that of 1883 (the one then under consideration), in which no general classification is attempted, but a special legislation adopted for certain counties selected from all others,

and to be ascertained by their populations rather than by their names. . . . If, indeed, such legislation were to be recognized as legitimate, vain would be the constitutional prohibition of local or special laws. But little ingenuity in the way of so-called classification would be necessary in order to isolate every single county, borough, ward, township and school district in the state, and provide for each its own local code." In Morrison v. Bachert, 112 Pa. 322, we held an act to be local legislation which regulated the fees of county officers "except in counties containing more than 150,000 or less than 10,000." Mr. Justice PAXSON delivering the opinion says (p. 328): "That the act in question is in direct conflict with the constitution is too plain for argument. It is only necessary to read the title to this act to see this. It excludes perpetually from its operation all counties having a population of over 150,000 inhabitants. This makes it a local law. If it can exclude Philadelphia and Pittsburg, it may exclude every other county in the state but the one county seeking such special or local legislation. . . . Nor can this legislation be sustained upon any rational theory of classification. In point of fact, there is no attempt at classification; it was a mere exclusion of certain counties." In Scranton School District, 113 Pa. 176, an act was declared local legislation which provided for the levying of taxes, etc., but having a proviso excluding all cities of the third class which, by an ordinance, would not accept the provisions of the act. GREEN, J., delivering the opinion says (p. 190): "The circumstance that the power to determine the question is delegated to another body does not at all affect the question. The practical result is the same, the law of 1875 will be limited to the one or more cities that do accept, and that makes it local. All our recent decisions are to the effect that if local results either are or may be produced by a piece of legislation, it offends against this provision of the constitution, and is void."

In Davis v. Clark, 106 Pa. 377, an act giving the right to file a mechanic's lien with a provision that it should not apply to counties having over a certain population was held to be local, and therefore void. MERCUR, Chief Justice, in the opinion of the court says (p. 384): "The main contention is whether the act of 1879 is in conflict with this clause of the

constitution? It shows on its face that it was not intended to apply, and does not apply to the whole state. It assumes what was a well known fact, that some of the counties had each a population greater than 200,000. In the counties of Philadelphia and Allegheny, that greater population had been legally found by the census of 1870. . . . It was not, then, a general act, applicable to every part of the commonwealth. It did apply to a great number of counties; but there is no dividing line between a local and a general statute. It must be either the one or the other. If it apply to the whole state it is general. If to a part only, it is local. As a legal principle it is as effectually local when it applies to sixty-five counties out of the sixty-seven, as if it applied to the one county only. The exclusion of a single county from the operation of the act makes it local." Perkins v. Philadelphia, 156 Pa. 554 involved the consideration of " an Act to abolish commissioners of public buildings, and to place all public buildings heretofore under the control of such commissioners, under the control of the Department of Public Works in cities of the first class." The act was held to be local and unconstitutional. Mr. Justice DEAN delivering the opinion says (p. 562) : " This act purports to be a general law applicable to cities of the first class. We have held, and now adhere to it, that the legislature may lawfully classify cities for corporate purposes, and that an act to promote such purposes is not local or special, merely because, at the date of its passage, there was but one city to which it applied. But it has been decided in case after case since the constitution of 1874 went into effect, in positive, unmistakable language, that if the act was intended to apply to but one particular city, county or township, and was not intended to and could never apply to any other, it was local and therefore unconstitutional. This act is nominally general; applies in terms to cities in the first class; abolishes commissioners of public buildings for the use of courts and municipal purposes in such cities, created by special acts of assembly, and places all buildings heretofore under their control in the control of the department of public works. At the date of its passage there was just one city, one set of commissioners, one special act of assembly, one public building, to which it could apply; from the very nature of the case, there never could be

another city in the first class to which the act could apply, for it transfers to the department of public works, buildings heretofore under the control of such commissioners ; no matter how many cities come into this class, nor how soon they reach it, this act cannot apply to them, for their affairs have not heretofore been regulated by any such act as that of 1870."

From these and other decisions of the court, it is settled that the test whether a statute is local and special legislation within the prohibition of the constitution is whether it operates upon all counties or cities alike, and when they are properly classified, it acts upon all counties or cities of the same class alike, or whether it operates upon certain counties or certain cities or upon a part of a class of counties or cities and excludes all others. If the latter is the result or effect of the act, and it was so intended to be, it is local or special nothwithstanding it is in terms general. The court will look at the substance and not the form of legislation in determining the question, and a local or special act, repugnant to the fundamental law, will be declared void though it may be disguised as a general act. Classification of cities may be used as a basis for legislation which relates to municipal affairs, but if the legislation concern subjects of general, as distinguished from a municipal character, it passes into the realm of local or special legislation forbidden by the constitution. However disguised, classification can never be successfully invoked for the purpose of evading the constitutional inhibition against local or special legislation.

The answer of the defendants raises the question of the right of the plaintiffs, citizens and taxpayers of Allegheny City, to maintain this bill and test the constitutionality of the act of 1905. We think this question too well settled to require extended discussion : Wells v. Bain, 75 Pa. 39 ; Wheeler v. Philadelphia, 77 Pa. 338 ; Pittsburg's Appeal, 79 Pa. 317. This last case was a bill to restrain the city of Pittsburg and its officers from exercising authority over an adjacent municipality admitted to the city by an ordinance passed in pursuance of an act of assembly, the provisions of which the plaintiffs, citizens and taxpayers of the municipality, claimed had not been complied with by councils in admitting the municipality as part of the city. The defendants de-

nied the right of the plaintiffs to maintain the bill. In sus-
taining the bill, Mr. Justice GORDON speaking for the court
said (p. 324) : " The right of a private citizen to maintain a
bill such as that upon which this case is founded is hardly
open for argument. So many are the cases in which such
bills have been sustained that one might suppose this matter
to be no longer open for debate." It was also said in the
opinion that " the plaintiff, who is threatened by most burden-
some impositions, should have the power to inquire into the
right by which the councils of Pittsburg proposed to act in
subjecting his person and property to their jurisdiction for the
purposes of municipal government and taxation."

There can be no doubt that the act of 1905 regulates the
" affairs of cities " in contemplation of the constitution. In
Morrison v. Bachert, 112 Pa. 322 the trial court defined
" affairs of counties " to be such " as concern counties in their
governmental and corporate capacity." This court, however,
thought the definition too narrow a construction of these words
and held that " When it (the constitution) speaks of the affairs
of a county, it means such affairs as affect the people of that
county." In that case it was held that an act to ascertain
and appoint the fees to be received by certain county officers
was an act regulating the affairs of counties. This construc-
tion of the clause in question was followed and approved in
Frost v. Cherry, 122 Pa. 417, where it was held that this
clause of the constitution avoided an act of assembly repeal-
ing a section of the fence law of 1700. And in Common-
wealth v. Patton, 88 Pa. 258, and in Scowden's Appeal, 96
Pa. 422, this court held that an act of assembly authorizing
the holding of special sessions of the courts of certain counties ·
away from the county seat was a law regulating the affairs of
counties and was special legislation and void. In Perkins v.
Philadelphia, 156 Pa. 554, it was held that an act of assembly
" regulates the affairs of the city " which abolished the com-
missioners of public buildings and placed all public buildings
theretofore under their control in the control of one of the de-
partments of the city government. The act under considera-
tion here not only affects the people of the two cities but con-
cerns the two cities in their governmental and corporate
capacities. It enlarges the territory and population of one,

and deprives the other of its charter and government as a city. It is apparent, we think, that the act is a "law regulating the affairs of " the cities within its operation.

Is the legislation in question of local or special operation and, therefore, within the prohibition of article III, section 7 of the constitution? This is the vital and controlling question in the case and, under the well-established rules of constitutional interpretation and our own construction of the clause in question, it must be answered in the affirmative. The title of the act clearly indicates the subject of the enacting part and discloses the local and special features of the statute. It shows that the act was not intended to apply to any two cities of the state so as to make it general in its operation, but conditions are imposed which restrict its application to certain cities, thereby depriving the other cities of the state of the benefit of its provisions. The statute is operative " where two cities are contiguous and in the same county." Its provisions can be invoked to annex only two cities and when they are thus situated. Two cities of this description may be annexed to each other and all others are excluded from the operation of the statute. As we take judicial cognizance of the municipal divisions of the state as well as of their location, we know as averred in the bill and not denied in the answer, that the cities of Allegheny and Pittsburg in Allegheny county are the only two contiguous cities in the state, and that there are no two contiguous cities in any other county in the state. The act, therefore, is limited in its operation to these two cities, and the effect or result of the legislation is the same, and the act as clearly special, as if the names of the two cities had been written in the statute instead of the periphrase used in the description of the cities subject to its operation.

The identification to the two cities intended to be affected by the act is also aided by the provision of the statute that " for purposes of this act, cities separated by a stream, river or highway shall be included under the term contiguous." Aside from the contention that the act applies only to cities separated by a stream, river or highway, this clause of the act clearly suggests the two Allegheny county cities as the cities subject to its operation. We judicially know that Pittsburg and Allegheny are the only two cities in the commonwealth

separated by a stream or highway, and the fear that that fact would render those cities not contiguous within the meaning of the statute moved the promoters of this legislation to further identify them by inserting this clause in the act.   This feature should not and cannot be ignored when the court is called upon to test the constitutionality of the statute as it clearly earmarks the legislation as local and special.

There is no merit in the contention that at some time in the future there may be two other cities which may become contiguous and in that event can be consolidated under the provisions of the act.   With a knowledge of the facts, known to the legislature as well as to the court, this is not within the range of probability, but a possibility so remote that it must be excluded from consideration in determining the constitutionality of the statute.   It could only occur if a community adjacent to any of the cities of the state should become sufficiently populous to enable it to become a city and should take the necessary legal steps to make itself a city and subject to the operation of the act, or if the boroughs lying between and connecting certain cities of the state should, by the requisite legal proceedings, be annexed to those cities or form themselves into a city and thereby connect two existing cities so as to make the act operative.   These are simply contingencies within the realm of speculation and entirely too remote to support legislation otherwise repugnant to the constitutional mandate.

The statute requires any two cities desirous of availing themselves of its provisions to be located in the same county. This confines the act in its operation to cities within certain territorial limits and brings it within the domain of special legislation, prohibited by the constitution.   The act does not attempt to classify cities on any basis whatever.   It provides simply that it shall operate upon two cities situated in the same county.   It, therefore, excludes from its provisions and denies its privileges to all cities separated by a county line, or which are not wholly within the same county, although occupying contiguous territory.   All cities whose boundaries are coterminus with the county line are perpetually excluded from the operation of the statute, although other cities may adjoin them at different parts of their boundaries.   This distinction made

in the act between the cities of the commonwealth is not based upon necessity nor upon any grounds which the law recognizes as justifying classification. Its effect is to restrict the operation of the statute to two cities located in the same territorial division of the state; and when considered in the light of the conceded facts, it fixes with unmistakable certainty the two cities to be consolidated under its provisions. A clearer or more palpable attempt to evade the constitutional prohibition against special and local legislation is not disclosed in any of the numerous bills introduced in the general assembly since the adoption of the present constitution, not excepting the statute, which Mr. Justice PAXSON in Commonwealth v. Patton, 88 Pa. 258 very properly characterized as " classification run mad."

The present constitution went into effect almost a third of a century ago. Prior to its adoption, there was practically no constitutional restraint on the power of the general assembly to enact local or special legislation. As has been pointed out in the opinions of this court, one of the manifest objects of the adoption of the last constitution by the people of the state was to eradicate the evils of local and special legislation which had grown to such an extent as to make its abuse almost unendurable. Such was the purpose of sec. 7 of article III, which specifies more than fifty subjects on which the general assembly is prohibited from passing any local or special law. Notwithstanding this emphatic and comprehensive declaration in the constitution against this species of legislation, there has not been a session of the general assembly since its adoption that the framers of legislation have not attempted to evade this provision of the instrument by all the ingenuity at their command. They have done this in the face of repeated warnings of this court that the constitutional mandate would be rigidly enforced. Nearly twenty years ago, in speaking of this provision of the constitution and the intention of the court to compel a strict observance of it, in Morrison v. Bachert, 112 Pa. 322, Mr. Justice PAXSON said (p. 328) : " It was a wise provision and will be sternly enforced. It is our purpose to adhere rigidly to that instrument, that the people may not be deprived of its benefits. It ought to be unnecessary for this court to make this judicial declaration, but it is proper to do so, in view of the amount of legislation

which is periodically placed upon the statute book in entire disregard of the fundamental law. As we view it, this note of warning at this time is needed." We desire to reiterate and emphasize this admonition. It is within our power, and it is our duty, to strike down legislation repugnant to any provision of the constitution. It is not the province of either department of the government to criticise or question the wisdom of the people in the adoption of any part of their fundamental law ; nor can either department be permitted to ignore or evade its provisions under any pretext or by any device whatever.

We are of opinion that the act of April 20, 1905, providing for the annexation of two contiguous cities in the same county, is local and special legislation within the prohibition of article III, sec. 7 of the constitution and is, therefore, void. It follows that the defendants are without authority to institute or maintain the proceedings taken by them for the purpose of annexing the city of Allegheny to the city of Pittsburg, and that the plaintiffs are entitled to the relief prayed for in the bill.

### DECREE.

This cause came on to be heard on bill and answer and was argued by counsel, and now, June 22, 1905, after consideration, it is ordered and decreed that an injunction be issued perpetually restraining the city of Pittsburg, and William B. Hays, mayor, James S. Wightman, president of select council, and R. B. Ward, president of common council of the city of Pittsburg, and each of them, from taking or maintaining any proceedings under the act of assembly, approved April 20, 1905, for the purpose of annexing the city of Allegheny to the city of Pittsburg. It is further ordered that the costs of this proceeding be paid by the city of Pittsburg.

Mr. Justice Potter, dissenting :

I am not able to agree with the reasoning of the opinion which has been adopted by the majority of the court in this case, nor to accept the conclusion therein set forth. Even if it be true that the act in question was intended to facilitate the union of Pittsburg and Allegheny, yet that fact cannot in

itself affect the constitutionality of the act. The fact that legislation meets the needs of some particular locality does not render it obnoxious to the constitution. Perhaps most legislation owes its origin to special or particular needs, which are no less meritorious because they must be included in and satisfied by laws expressed in general terms. In his work, "Restrictions upon Local and Special Legislation," Mr. Binney has defined general laws to be such as "operate uniformly upon all members of any class of persons, places, or things requiring legislation peculiar to themselves, in the matters covered by the laws." A law is to be regarded as general when it is framed in general terms, is restricted to no locality and operates equally upon all of a group of objects whose condition or needs render such legislation appropriate.

The act of April 20, 1905, provides for the consolidation of any two contiguous cities situate in the same county, in the state. It must be admitted that any " two contiguous cities " is a general expression. It matters not at how many or how few places in the state there may be two cities which are contiguous. Wherever and whenever there are such, the act would apply. As Mr. Binney says, if the classification be valid, the number of members in a class is wholly immaterial. So that it makes no difference whether there be one or one hundred places in the state which will at the present time fit the conditions of the act, so long as the way is open for other places to come in, as occasion may arise.

But it is suggested that the further limitation of the operation of the act, to cases where two contiguous cities are "situate in the same county," makes it local. But why so? In so far as the language of the act is concerned, no county in the state is excluded from its operation. There are sound reasons why no city should be allowed to extend beyond the boundaries of a single county, and the limitation in that respect, if general, is legitimate.

Under the Act of February 2, 1854, P. L. 21, a local act applying to Philadelphia, it is provided that the boundaries of Philadelphia shall be extended so as to embrace the whole of the territory of the county of Philadelphia. And it is suggested that because there cannot therefore be two contiguous cities in Philadelphia county, that county is excluded from

the operation of this act, with the result that the legislation thereby becomes local.

But this court decided squarely in Evans v. Phillipi, 117 Pa. 226, that a statute, general in form, is not to be treated as a local one, simply because of the intervention of some local statute, unrepealed, which prevents it from taking general effect.

Aside from that, it is difficult to see why the fact that one county in the state is already so filled with a city as to leave room for no other contiguous city within its boundaries, should be any more of an obstacle to the efficiency of a general law, than the fact that in many counties of the state no cities at all exist at the present time. The local act governing Philadelphia may be repealed; and that county may be enlarged, in which case this act would apply to every county in the state. And contiguous cities may grow up in any county, which, under the terms of this act, may in due time be annexed to each other and consolidated into one municipality.

I would uphold the constitutionality of the act of May 20, 1905, and dismiss this bill.