# Sheraden Borough.

*Constitutional law—Boroughs—Annexation of borough to city—Local and special laws—Contiguous territory—Counties—Act of April 28, 1903, P. L. 332.*

The Act of April 28, 1903, P. L. 332, entitled "An act for the annexation of any city, borough, township, or part of a township, to a contiguous city, and providing for the indebtedness of the same," does not violate article III, sec. 7 of the Constitution of Pennsylvania, which provides that "the General Assembly shall not pass any local or special law regulating the affairs of counties, cities, townships, wards, boroughs or school districts." That there may be a county within the commonwealth to which this act, by reason of special legislation previously passed, governing the affairs of that county, would not at present apply, is no argument against the general character of the act.

. . A statute, general in form, is not to be treated as local or special, simply because of the intervention of some unrepealed local statute which prevents it from having general effect.

*Statutes — Repeal — Boroughs — Annexation of territory — Allegheny county—City of Pittsburg—Act of May 10, 1871, P. L. 718.*

The Act of May 10, 1871, P. L. 718, entitled: "An act to authorize the consolidation of adjacent territory within the city of Pittsburg," is not repealed either expressly or by implication by the Act of April 28, 1903, P. L. 332, entitled: "An act for the annexation of any city, borough, township, or part of a township, to a contiguous city, and providing for the indebtedness of the same." The two acts are not repugnant; they stand together; and proceedings may be instituted under either to accomplish the object in view.

*Municipalities—Cities—Boroughs—Annexation—Contiguous territory -Judicial notice—Courts—Notice.*

In proceedings under the Act of April 28, 1903, P. L. 332, to annex a borough to a contiguous city, the courts will take judicial notice of the fact that the borough is contiguous to the city, and the proceedings will not be invalid because such fact is not verified by affidavit; and the same rule applies as to the fact that the borough is in the same county with the city.

In proceedings under the Act of April 28, 1903, P. L. 332, the court commits no abuse of discretion in fixing ten days as sufficient notice to the public of the hearings in court of objections to the annexation.

Where an order in proceedings under the Act of April 28, 1903, P. L. 332, directs that notice shall be given in the " Pittsburg Gazette," and it appears that the notice was published in the " Pittsburg Gazette-Times," and that there was no other paper known as the " Pittsburg Gazette " published in the county at the time, the publication is a substantial compliance with the order of the court.

The certificate of the judges of the common pleas constituting a returning board of a special election held in annexation proceedings under the Act of April 28, 1903, P. L. 332, imports verity, and is conclusive of the facts therein stated.

Argued May 9, 1907. Appeal, No. 140, April T., 1907, by William J. Sheraden et al., from order of Q. S. Allegheny Co., June T., 1906, Miscellaneous Docket No 40, in annexation proceedings to the city of Pittsburg In re Petition of Qualified Voters of the Borough of Sheraden. Before Rice, P. J., Henderson, Orlady, Head and Beaver, JJ. Affirmed.

Petition for the annexation of Sheraden borough to the city of Pittsburg. Before Evans, J.

The opinion of the Superior Court states the case.

*Error assigned* was the decree of the court affirming the annexation.

*F. P. Iams*, with him *John C. Bane* and *T. C. Gabler*, for appellants.

*N. R. Criss*, for appellees.

OPINION BY BEAVER, J., November 18, 1907:

The inquiry suggested by the assignments of error in this case involves the consideration of the constitutionality and the interpretation of, and the regularity of the proceeding under, the Act of April 28, 1903, P. L. 332, entitled "An act for the annexation of any city, borough, township, or part of a township, to a contiguous city, and providing for the indebtedness of the same," under and in pursuance of which, certain of the inhabitants of the borough of Sheraden sought to be annexed to the city of Pittsburg, the final decree of annexation being contested by the appellants upon the grounds hereinafter stated.

1. Is the act constitutional? On its face and by its terms, it is applicable to the entire commonwealth. It is contended, however, by the appellants that it violates article III, section 7, of the constitution of Pennsylvania, which provides that, "The general assembly shall not pass any local or special law regulating the affairs of counties, cities, townships, wards, boroughs or school districts." This contention rests almost entirely upon the appellants' interpretation of Sample v. Pittsburg, 212 Pa. 533. This case, which is the authoritative interpretation of the Act of April 20, 1905, P. L. 221, and by which said act was declared unconstitutional, rests almost exclusively upon the fact that the only cities in the commonwealth to which said act could apply were those of Pittsburg and Allegheny. It is true that, in his opinion, Mr. Justice MESTREZAT refers to the fact that the act confines the territorial limits within which it is to apply to the same county but, as we understand the argument, this is used to further emphasize the fact that the cities referred to in the act can be no other than those of Pittsburg and Allegheny. By the very terms of the

VOL. XXXIV—41

act of 1903, under consideration, it applies to "any city, borough, township, or part of a township, in any county in the commonwealth." It is true that the annexation must be "to any contiguous city in the same county." It applies, however, to any city of any county and to any municipality to be annexed to any city of any county. We take it that it would be entirely legitimate for the legislature to say by a general act that no city of this commonwealth should be composed of parts of two or more counties, and such a provision would be most reasonable, otherwise the municipal authorities would be compelled to transact the business of the city in several counties. Liens for municipal improvements would necessarily be filed in the county within which the portion of the city where the improvements are made would. be situated. The police administration of the city would be necessarily involved in the administration of the criminal courts of more than one county. It will readily be seen that not only inconvenience but confusion would arise under such a state of municipal government. The regulation of this would clearly be within the power of the legislature. Indeed, under the provisions of the Act of May 23, 1889, P. L. 277, "Providing for the incorporation and government of cities of the third class," it is provided in article III, section 1, that "Any borough or township, or part of a township, adjoining any city of the third class, and being part of the county in which the same is situated, may be annexed to such adjoining city in the following manner." In Harris's Appeal, 160 Pa. 494, this latter act, although not this particular section of it, was under consideration by the Supreme Court, and it was decided that it was not local or special legislation within the meaning of article III, section 7 of the constitution, as it was applicable to all cities of the third class. We cannot see, therefore, why the legislature may not say that, in the annexation of any borough, township, or part of a township, the annexation can be made only within the limits of the county within which the city, to which such annexation is sought, is situated. Such a restriction is, therefore, no more a violation of the constitution than if the legislature were to say, as it has said, that in the incorporation of cities the territory to be included within the city limits should be confined to a single county.

That there may be a county within the commonwealth to which this law, by reason of special legislation previously passed, governing the affairs of that county, would not at present apply, is no argument against its general character. This has been settled in very many cases, Evans v. Phillipi, 117 Pa. 226, in which it was held that "A statute, general in form, is not to be treated as local or special, simply because of the intervention of some unrepealed local statute which prevents it from having general effect," and Rose v. Beaver County, 20 Pa. Superior Ct. 110 ; s. c., 204 Pa. 372, are familiar examples. What was said in Com. v. Gilligan, 195 Pa. 504, is applicable here: "Undoubtedly many acts have been passed, whose framers intended to evade the constitutional prohibitions ; these the courts have always unhesitatingly struck down, and may be safely relied on to continue to do so. But where the legislative intent is not to evade the restrictions the courts are not required to be astute in extending them over cases not really within the evil prohibited, though the form may have the appearance of coming within the literal words of the constitution." "It may, therefore, be taken as settled law that, in cases of this character, the courts will look beyond the mere form of the act and examine its true intent and effect, in the light of the purpose of the constitutional restrictions."

2. Does the act apply to the county of Allegheny? It is claimed that it does not, for the reason that the Act of May 10, 1871, P. L. 718, entitled "An act to authorize the consolidation of adjacent territory within the city of Pittsburg," makes special provision for the annexation of adjacent territory to the city of Pittsburg, and that, inasmuch as the act under consideration does not in express terms repeal the act of 1871, the former special act must govern to the exclusion of the later general act. It is true that the act of 1903, under consideration, does not contain any express words of repeal of the special act of 1871 or of any other law. It is true, therefore, that the latter act does not repeal the former, unless so repugnant in its provisions that the two cannot stand together, or the intention of the legislature touching the repeal is plainly apparent.

It is also true that: "Repeal by implication is not favored. It is a reasonable presumption that the legislature did not intend to keep really contradictory enactments in the statute

book, or to effect so important a measure as the repeal of a law, without expressing an intention to do so. Such an interpretation, therefore, is not to be adopted, unless it be inevitable. Any reasonable construction which offers an escape from it is more likely to be in consonance with the real intention. Hence it is a rule, founded in reason as well as in abundant authority, that, in order to give an act not covering the entire ground of an earlier one, nor clearly intended as a substitute for it, the effect of repealing it, the implication of an intention to repeal must necessarily flow from the language used, disclosing a repugnancy between its provisions and those of the earlier law so positive as to be irreconcilable by any fair, straight or liberal construction of it, which would, without destroying its evident intent and meaning, find for it a reasonable field of operation, preserving at the same time the force of the earlier law and construing both together, in harmony with the whole course of legislation upon the subject:" Endlich on The Interpretation of Statutes, sec. 210.

Later on, in section 218, it is said: "Further, it is laid down generally, that when the later enactment is worded in affirmative terms only, without any negative, expressed or implied, it does not repeal the earlier law. Thus, an act which authorized the quarter sessions to try a certain offense would involve no inconsistency with an earlier one which enacted that the offense should be tried by the queen's bench or the assizes; nor an act authorizing a proceeding to contest the validity of a will, by petition to the court of common pleas, any inconsistency with an earlier one for a proceeding by bill in chancery; and in neither case, therefore, would the later repeal the prior law."

Applying these general rules to the acts in question and comparing them the one with the other, we do not find, upon such a comparison, that there is such repugnancy the one to the other as to require us to declare that the special act is necessarily repealed by implication by the general and later one. It is true that they cover the same subject. The object to be attained by each is the same. But there is no reason why either the one or the other may not be pursued, in order to reach the definite object in view. The specific provisions of the two acts are not entirely similar, nor is it necessary that they should be. They are not repugnant. There is no antagonism between

their provisions, and in such a case there is no necessarily implied repeal. We are clearly of the opinion that the proceedings in this case, under which the citizens of the borough of Sheraden endeavored to seek the annexation of that municipality to the city of Pittsburg, under the provisions of the later general act, were authorized and effective, even if the special act of 1871 relating to the same subject was not impliedly repealed.

" Implied repeals are not favored. If the legislature have failed to adopt the plain and simple method of express repeal, it will not be presumed that they intended a repeal by implication, unless there is such a manifest repugnance and inconsistency between the statutes that they cannot justly and reasonably stand together, or unless every provision of the one is so effectually supplied by the other as to lead to an irresistible conclusion that the later statute was intended as a substitute for the earlier. Where both statutes are general and in the affirmative, and it is possible for them to be so construed as to stand together, the courts, in the absence of any clear showing of a contrary legislative intent, will construe them according to the general rule where statutes are in pari materia, so that both may remain in force: " 20 P. & L. Dig. of Dec. 35,216.

What is true in regard to two general statutes is also true in relation to the repeal of a special statute by a subsequent general statute: " The rule that implied repeals are not favored and will be held not to exist where there is no irreconcilable inconsistency, or where the later statute shows an intent to except the earlier from its provisions, operates to prevent an implied repeal of local or special statutes by subsequent general statutes: " 20 P. & L. Dig. of Dec. 35,245.

There remains, therefore, the inquiry as to whether or not the proceedings under the act of 1903 were regular.

3. Were the provisions of the act complied with? It is claimed that:

(a) The petition upon which the proceedings were based was not properly verified by affidavit, as required in the first section of the act which prescribes that, " The petition shall be subscribed by the petitioners within three months immediately preceding the presentation thereof to the court, and shall be verified by affidavit of one or more of the petitioners." The

petition itself is very brief and sets forth but two facts : (1) That the petitioners are qualified voters of the borough of Sheraden, and (2) " that said borough of Sheraden is contiguous to the city of Pittsburg in said county of Allegheny, and the petitioners desire that it may be annexed to and become a part of said city of Pittsburg, according to the act of assembly in such case made and provided." The affidavit accompanying the petition, made, as required, by two of the petitioners, sets forth " that the persons whose names are subscribed to the foregoing petition are all qualified voters of the borough of Sheraden, and that said petition is signed by at least five per centum of the qualified voters of said borough, as shown by the registry lists for the last preceding general election of said borough," and " that all of the signatures thereto have been affixed since the first day of June, 1906, and are in the proper handwriting of the respective petitioners." The facts set forth in the petition, therefore, and those which are necessary to give the court jurisdiction under the act of assembly are all verified by the affidavit, except the fact that the borough of Sheraden is contiguous to the city of Pittsburg in said county of Allegheny. Under the general rule that courts will take judicial notice of the municipal divisions of the territory within their jurisdiction at least, we cannot see that it was necessary for this fact contained in the petition to be verified by affidavit. The court could and did take judicial notice of the fact that the borough of Sheraden was contiguous to the city of Pittsburg, because the alleged defect in the affidavit was called to its attention by the exception filed by the appellants to the original petition. If the court had not taken judicial notice of the fact, it would, of course, have required proof, and we may, therefore, assume that it exercised an undoubted right in taking judicial notice of an important fact which, if not correct, would have excluded its jurisdiction under the act.

It was further objected to the petition that " Said petition does not contain any averment, verified by the affidavit of one or more of the petitioners, that said borough of Sheraden and said City of Pittsburg are in the same county." Although such allegation is not set forth in words, it is alleged that the petitioners " are qualified voters of the borough of Sheraden, Allegheny county, Pa.," and " That said borough of Sheraden

is contiguous to the City of Pittsburg in said county of Alle-
gheny." Of this the court could also take judicial notice and
it was, therefore, not essentially necessary that the allegation
should be verified by affidavit. We think, therefore, the peti-
tion was sufficiently verified, as required by the act.

(b) After the filing of the petition, and notice to the chief
executive officer of the city, to which the annexation is proposed
to be made, it is made the duty of the councils of such city
" within three months from the date of said notice to, by or-
dinance, consent to or disapprove the proposed annexation. If
the councils disapprove, then there shall be no further pro-
ceedings under that petition; but if the councils approve, then
the court shall direct such notice to be given to the people of
the territory proposed to be annexed as the court shall consider
to be proper and reasonable, and the said notice shall state a
reasonable date thereafter at which the petition will be con-
sidered and all parties heard." In accordance with this provi-
sion of the law, the court made the following order: "And
now, September 26, 1906, it appearing to the court that, in
pursuance to notice served on the mayor of the City of Pitts-
burg, as required by law, and the prior order of this court, the
said City of Pittsburg has, by ordinance duly passed and ap-
proved, a certified copy of which ordinance has been filed at
the above number and term, consented to the annexation of
the borough of Sheraden to said City. Now, therefore, the
court, on motion of N. R. Criss, attorney for petitioners, does
hereby fix Saturday, October 6, 1906, at ten o'clock A. M.,
as the time for consideration by the court of the petition in
this case, when all concerned therein will be heard. It is
further ordered and directed that notice of said hearing be
given by posting at least thirty handbills in conspicuous places
throughout said borough of Sheraden at least ten day prior to
said hearing, and by one insertion in the 'Sheraden News' once
prior to October 6, 1906, and in the 'Pittsburg Chronicle-Tele-
graph' three times prior to October 6, 1906."

Prior to October 6, the appellants filed their exceptions
to the proceedings, in the fourth of which, after previously
reciting that Saturday, October 6 had been fixed by the court
as the time for the consideration of the petition, etc., it was
alleged: "That notice of said time which was fixed as afore-

said by your honorable court for the consideration by said court of said petition has not been given by the petitioners, in accordance with the order of said court of date September 26, 1906, and of record in said proceeding. In and by said last mentioned order of said court it was ' ordered and directed that notice of said hearing be given by posting at least thirty hand-bills in conspicuous places throughout said borough of Sheraden at least ten days prior to said hearing,' etc., and we are in-formed and believe, and expect to be able to prove, and there-fore aver that notice of said hearing was not given by posting handbills in the manner required in said order for said period of ' at least ten days prior to said hearing.' " It is to be noted that the court fixed the day for the hearing on October 6, and that the order, requiring the handbills to be posted, was made on September 26. If the handbills were posted upon the day on which the order was made, ten days would have elapsed, counting that day as one, prior to the hearing on October 6. The court, therefore, must of necessity have so counted the time, and it is significant that the appellants had timely notice, for their exceptions were filed prior to the hearing.

It is significant that the act of 1903 does not fix any definite time as to notice. Its language is : " The court shall direct such notice to be given the people of the territory proposed to be annexed as the court shall consider to be proper and reasonable, and the said notice shall state a reasonable date thereafter at which the petition will be considered and all parties heard." The time fixed for the hearing was a reason-able time. The notice given was, in the opinion of the court below, in which we entirely concur, a reasonable notice, the proof of which is that the appellants—and it is not alleged that any others were not notified—had the notice and filed their exceptions. The notice to be given was entirely within the discretion of the court. That discretion was exercised, and, in computing the time fixed for the notice and in fixing the day for the hearing, the court evidently calculated that the ten days were included between the date of the order and the day of the hearing. To hold otherwise would lead us to the absurdity of a chronological impossibility which should not be charged to the court, without good reason.

(c) Notice of election, under the proceedings for annexation,

was directed by the court to be given by its order of November 22, 1906, as follows: " that notice of said election be given by publication in the ' Pittsburg Gazette' once a week for five weeks," etc.   It is alleged that what had been known as the " Pittsburg Gazette" for many years had, prior to the date of the order for the election, purchased the " Pittsburg Times," and that the paper, after said purchase, was known as the " Pittsburg Gazette-Times."  No other paper known as the " Pittsburg Gazette " was published in Allegheny county at the time.   To assert, therefore, that a publication in the " Pittsburg Gazette-Times " was not a compliance with the order of the court that notice should be given in the " Pittsburg Gazette " is a refinement of technicality which requires no discussion.   The publication, as made, was a substantial compliance with the order of the court.

(d) Were the returns of the special election in regard to annexation made to the proper court?   Section 4 of act of 1903 provides: " In receiving and counting and in making returns of the votes cast, the inspectors, judges and clerks of said election shall be governed by the laws of this commonwealth regulating municipal elections; and the vote shall be counted by the court as is now provided by general laws governing municipal elections, and all the penalties of the said election laws,. for the violation thereof, shall apply to the voters, inspectors,. judges and clerks voting at, and in attendance upon the elections held under the provisions of this act.   The result of the: election shall be certified to the court of quarter sessions having jurisdiction of the proceedings."   Among the records of the court of quarter sessions in this case is a certificate entitled " Certificate of Returning Board of Judges," addressed to the judges of the court of quarter sessions of Allegheny County, Pennsylvania, signed by " MARSHALL BROWN, Judge C. P. Court No. 1, ROBERT S. FRAZER, P. J., C. P. Court No. 2, JOHN M. KENNEDY, P. J., C. P. No. 3, Returning Board of Judges of Common Pleas Court," in which it is certified that: " The returns of the special election held in the borough of Sheraden, Allegheny. county, Pennsylvania, December 27, 1906, for the purpose of ascertaining the will of the qualified electors of said borough upon the question of the annexation of said borough to the City of Pittsburg, having been submitted to the Judges

of the Common Pleas courts of said county, at 12 o'clock noon on December 29, 1906, and by them opened and computed as directed by law, it is hereby certified that no fraud or mistake was alleged, or was apparent on the return, and that a total of 741 votes were cast upon the questions submitted, to wit: 'Shall the borough of Sheraden be annexed to and with the City of Pittsburg?' of which number 485 votes were 'Yes,' or in favor of such annexation, and 256 votes were 'No,' or against such annexation. Wherefore, it appears that a majority of 229 votes has been cast in favor of such annexation."

We are now asked by the appellants to go back of this certificate and to inquire whether the judges of the court of common pleas, who constituted the returning board of said court, did their duty. Clearly, we cannot do this in this proceeding and determine the fact as to who presented to them the returns from which they made their report to the court of quarter sessions. They knew their duty. They are presumed to have done their duty, and the doctrine relating to the conduct of public officers, omnia præsumuntur rite esse acta, applies with peculiar force. The certificate of the judges of the common pleas, who constituted the returning board, filed in this case, imports verity. No exception to their action was taken. Their certificate, therefore, was conclusive of the facts therein stated.

The questions involved in this case are of great importance, and we have, therefore, considered it at some length.

It would have been especially satisfactory if, in view of its importance, an opinion of the court below had been filed in the case.

The argument of appellants' counsel was ably and fully presented with much earnestness but, on a careful review of the entire case, we are unable to see any substantial ground for our interference.

The decree is, therefore, affirmed and the appeal dismissed at the costs of the appellants.