# Fister, Appellant, *v.* Kutztown Borough.

*Boroughs—Annexation of land—Action of burgess and council— Equity—Jurisdiction—Act of April 22, 1903, P. L. 247.*

1. The chancery power conferred by a statute upon the courts of common pleas to restrain the commission or continuance of acts contrary to law and prejudicial to the interests of the community, or the rights of individuals, may be invoked to restrain a burgess and council of a borough from irregularly and illegally proceeding under the Act of April 22, 1903, P. L. 247, to annex adjacent territory to the borough; but while a court of equity may enjoin the annexation, if the action of council be contrary to law, it has not power to substitute its own discretion for that of the burgess and council.

2. In order to justify a court of equity in virtually reforming an ordinance adopted under the Act of April 22, 1903, P. L. 247, by excluding lands which the ordinance embraced, and then decreeing that the ordinance as thus reformed is valid, it ought to be very clearly

shown that the lands excluded by the court were so situated as to make it undeniably and absolutely unlawful for the borough to annex them.

3. Where at a meeting of freeholders the majority adopt preambles and resolutions favoring the annexation of land to a borough, and these preambles and resolutions are signed by the freeholders, and the meeting also appoints a committee to confer with the borough officials in the matter of the proposed annexation, and this committee subsequently prepares a formal petition as provided by the Act of April 22, 1903, P. L. 247, in which they exclude 200 acres of land included in the resolutions, and this petition although not signed by anyone is annexed to the resolution, a subsequent ordinance based upon the petition is invalid because the petition which the council took as the basis of its action was not the petition which the freeholders had signed, but differed from it both in form and substance.

4. On a bill in equity to restrain action under such an ordinance it is not a valid answer to say that, though the annexation of the plaintiff's land to the borough is attempted under an illegal ordinance, the injury resulting from the invasion of his right is very slight as compared with the general benefits that will accrue if the illegal ordinance be allowed to stand, and, therefore, a court of equity ought to withhold its restraining hand.

5. While it is often said that an injunction is matter of grace, yet that phrase has acquired a definite meaning, which does not leave the exercise of the power to the mere pleasure or will of the chancellor.

Argued Nov. 15, 1911.   Appeal, No. 227, Oct. T., 1911, by plaintiff, from decree of C. P. Berks Co., on bill in equity in case of Thomas D. Fister et al. v. Kutztown Borough et al.   Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ.   Reversed.

Bill in equity for an injunction.   Before ENDLICH, P. J. The facts are stated in the opinion of the Superior Court.

*Error assigned* was the decree of the court.

*C. H. Ruhl*, with him *F. A. Marx* and *J. H. Marx*, for appellant.—The authority of the committee to make the change in the petition does not affirmatively appear: Taylorport Boro. Incorp., 21 W. N. C. 533.

The change made by the court below is without author-

ity of law: Danville Boro. v. Peters, 8 Luz. Leg. Reg. 273.

The ordinance involved in the case at bar is single and entire in its structure, and, one part failing, the entire ordinance must fail.

*William J. Rourke,* for appellee.—The change made by the court below is not without authority of law: Devore's App., 56 Pa. 163; Young Twp. Poor Overseers v. Blacklick Twp. Poor Overseers, 20 Pa. Superior Ct. 629; McFate's App., 14 W. N. C. 543; Dilworth's App., 91 Pa. 247; Evans v. Reading Chem. Fertilizing Co., 160 Pa. 209; Bigler v. Penna. Canal Co., 177 Pa. 28; Daugherty Typewriter Co. v. Kittaning Iron and Steel Mfg. Co., 178 Pa. 215; Wahl v. Cemetery Assn., 197 Pa. 197.

A municipal ordinance may be void in part and valid in part and the invalidity of part does not destroy the validity of the balance: Verona Boro.'s App., 108 Pa. 83; Pittsburg's App., 115 Pa. 4; Lansdowne Boro. v. Water Co., 16 Pa. Superior Ct. 490.

OPINION BY RICE, P. J., March 1, 1912:

The power conferred by the Act of April 22, 1903, P. L. 247, upon the burgess and council of any borough or incorporated town, to annex adjacent territory, is to be exercised by ordinance, on petition of a majority of the freehold owners "of any lot or outlots of any section of land lying adjacent" to the borough, and the statute provides that, whenever the borough authorities shall extend the limits of the borough in this manner, they shall file in the quarter sessions a plan or plot showing the boundary of the borough and of the section admitted, together with a certified copy of the ordinance and a description of the boundaries of the borough and of the borough as extended, giving the courses and distances in words at length: "which section shall, after the filing of the matter as aforesaid, be deemed part of said borough or town, and subject to its jurisdiction and government." No appeal or judicial review of the proceeding is provided for in the act,

and sec. 4 of the Act of June 2, 1871, P. L. 283, which authorized an appeal to the quarter sessions from an ordinance annexing land to a borough, was repealed: Donora Boro. v. Donora Boro., 26 Pa. Superior Ct. 300; Clairton Boro., 34 Pa. Superior Ct. 74. But it is well settled that the chancery power conferred by statute upon the courts of common pleas, to restrain the commission or continuance of acts contrary to law and prejudicial to the interests of the community or the rights of individuals, may be invoked in such cases: Devore's Appeal, 56 Pa. 163; Beaver Boro., 34 Pa. Superior Ct. 467; Clairton Boro., 34 Pa. Superior Ct. 74. . Thus, in Devore's Appeal, a bill in equity was filed by owners of certain lots, which, with other lots, had been annexed, by ordinance, under sec. 30 of the Act of April 3, 1851, P. L. 320. By that section, a prerequisite to the adoption of such ordinance was a petition of "not less than twenty of the freehold owners of lots, outlots or other tracts of land in any section lying adjacent to the borough," and this was construed to mean that the petition must be signed by twenty freehold owners of the lands or parts of the lands proposed to be included, all of whom must be residents on those lands. It appeared by the bill and answer that, while the petition was signed by thirty-five freehold owners of lots within the section to be annexed, only seventeen of these were residents thereon, the other eighteen being residents of the old borough. Upon the ground that this was not a compliance with the statutory provision, the court enjoined the burgess and council from exercising the jurisdiction of the borough over the extension, and, upon appeal, the Supreme Court affirmed the decree. The case is pertinent here for two purposes: first, to show that the plaintiffs in the bill before us, by reason of their ownership of lots within the section attempted to be annexed, had standing to invoke the jurisdiction of a court of equity, upon presentation of a proper case for the exercise of its restraining power; and, secondly, to show that, if the ordinance was not supported by such a peti-

tion as the statute contemplates, the defendants should be enjoined from exercising the jurisdiction of the borough over the entire territory embraced in the ordinance, and not merely over the lots of the plaintiffs. The analogous cases of Pittsburg's Appeal, 79 Pa. 317, and Sample v. Pittsburg, 212 Pa. 533, support both of these propositions. In Devore's Appeal, Justice STRONG, after showing that the power conferred by sec. 30 of the act of 1851 was an extraordinary one, not theretofore often committed to merely local authorities, said: "When, therefore, the burgess and town council of any borough attempt to extend its boundaries, and to embrace within them a new section of adjacent territory, it ought to appear clearly that they have authority for their action. All the requisites and preceding conditions which the legislature has prescribed for the exercise of the power must be shown to have existed, and these must be shown with reasonable certainty." The same principle is applicable in the construction and administration of the act of 1903, and should be observed particularly, because the action of council is not made dependent upon the giving of public notice of the proceeding, and is not subject to direct review by appeal to the court of quarter sesssions, except, perhaps, as was suggested in Clairton Boro., for irregularities apparent on the face of the record.

This cause, being at issue upon bill, answer and replication, was tried in the mode prescribed by the equity rules and resulted in a final decree excluding certain lands embraced in the ordinance, because they were exclusively farm lands, and certain other lands also embraced in the ordinance, because by reason of the exclusion of one of the first mentioned tracts they would not be adjacent to the borough, dismissing the bill as to this appellant, and precisely defining, by metes and bounds, the limits of the entire borough as it would be with such part of the land annexed by ordinance as was not excluded by the court. As already noticed, the court of common pleas, sitting in equity, has no general revisory jurisdiction over the an-

nexation of lands to a borough under the act of 1903. Nor has it the specific power conferred by the Act of April 1, 1863, P. L. 200, to exclude farm lands. That power is conferred upon the court of quarter sessions and is to be exercised in proceedings for the incorporation of boroughs. We cannot see that that act has any bearing upon the case before us. A court of equity may enjoin the annexation, if the action of council be contrary to law, but it has not power to substitute its discretion for that of the burgess and council. It is only upon the ground that the lands excluded by the court were not "lots or outlots," within the meaning of the act of 1903, that its decree as a whole can be sustained. We are not prepared to decide that they were not lots or outlots, within the meaning of that act, but, even if it be assumed that they were and that the ordinance was illegal and void to the extent that it included them, there is very serious question whether the court was not bound to treat the ordinance as an entirety. It is true, that the invalidity of part of an ordinance does not necessarily and under all circumstances render the whole ordinance void, if there be a distinct and separable part which is valid. This is very convincingly shown by the learned judge below. But here, the question does not arise upon separable provisions of the ordinance, but upon a single provision annexing a certain body of lands embraced within certain boundaries. Presumably the borough council exercised its discretion upon consideration of the relation of each part of this section to every other part, and of the entire section to the borough. The decree excludes some farm lands of considerable areas from the section admitted and leaves in other farm lands. But whether the council, to whose exclusive jurisdiction the matter belonged, would have admitted one part without the other is uncertain and largely conjectural. This is a consideration not to be overlooked. To say the least, in order to justify a court of equity in virtually reforming an ordinance adopted under the act of 1903, by excluding lands which the ordinance embraced, and then decreeing

that the ordinance as thus reformed is valid, it ought to be very clearly shown that the lands excluded by the court were so situated as to make it undeniably and absolutely unlawful for the borough to annex them. We are not convinced that the fact that they are exclusively farm lands is sufficient to invalidate the ordinance as to them. A fortiori, it is not, of itself, sufficient ground for holding that the court erred in not declaring the ordinance void as a whole. This view of the case renders it unnecessary to express a decided opinion upon the broader and more difficult question, whether, where parts of the section admitted could not be admitted lawfully, a court of equity may virtually reform the ordinance by cutting them off and enforcing the ordinance as to the other parts of the section. This is a question which may well be left open for consideration in a case which imperatively requires its decision.

We come now to the consideration of an objection, which, if sustained by the evidence is fatal to the ordinance as an entirety. This objection, stated generally, is that it was not enacted pursuant to such a petition as the statute contemplates. The paper first presented to the council, and the only paper signed by the freeholders, consisted of a set of preambles and resolutions. One of these resolutions was, in form and substance, a proposal that the present borough limits be extended so that the northeast boundary be a designated road, and the southeast, the southwest, and the northwest boundaries be certain lines, roughly described. Another of the resolutions was: "That a committee be appointed to confer with the proper officials of the borough in the matter of the proposed annexation." While these resolutions did not precisely define the boundaries of the land to be annexed, yet it is not clear that the description given was not sufficiently definite to bring it within the maxim, id certum est quod certum reddi potest. These resolutions were adopted at a public meeting of those favoring and those opposed to the annexation, and, as we understand

the testimony, the committee was appointed at that meeting. But whether at that meeting or subsequently, we do not regard as material. After the presentation of this paper to council, a petition, in due form, setting forth all the essentials contemplated by the act of 1903 and containing a precise and accurate description of land proposed to be annexed, was prepared by the direction, or, at least, with the approval, of the committee referred to in the resolutions. It begins with the words, "We, the undersigned petitioners, embracing, constituting and being the majority of the freehold owners of lots or outlots or other tracts of land lying adjacent to said borough of Kutztown, respectfully pray for the admission into and the annexation of the following described adjacent territory into the said borough of Kutztown, viz." This paper was then attached to the paper which the freeholders had signed, and in that form was presented to council. The preamble of the ordinance then adopted by that body recites the presentation of a petition of a majority of the freehold owners, etc., for the admission into the borough "of the section which such petitioners and others own as hereinafter described and contained." Then follows the body of the ordinance, in which the territory annexed is described by metes and bounds precisely as it was described in the second paper above referred to. Combining the two papers to make one petition was certainly an informality; but if that were the sole objection, and there were no substantial variance between them, we do not say that it would be fatal. The serious objection is that several hundred acres, which were included in the description contained in the paper which the freeholders signed, were omitted from the description contained in the final petition and in the ordinance. This was done with the assent of the committee. The secretary of council, being asked as to whether the eastern boundary line extended to the line designated in the first petition, testified as follows: "A. No, sir. Q. How far away is it from it? A. It was afterwards decided by the committee and in the presence

of councils that that was entirely too much territory, and they changed that line to the present boundary line of the ordinance.  By the court: Q. About how much less? A. That takes in probably 400 or 500 acres less than it had at first."  While there is no evidence that anyone acted in bad faith, it is quite clear that the committee misconceived the scope of their authority when they assumed that they had "authority to modify according to the best understanding we could get to."  According to the resolution we have quoted, their authority was to confer with the proper borough officials in the matter of the proposed annexation, that is, of the annexation proposed in the other resolution we have quoted.  This did not include power to modify the freeholders' application by withdrawing so considerable a portion of the lands embraced in their proposal, and we find no evidence, outside the resolution, which would warrant a finding that the committee had authority to change the application in such substantial manner.  We see no escape from the conclusion that the petition which the council took as the basis of its action was not the petition which the freeholders had signed, but differed from it both in form and substance. It results that one of the requisites and preceding conditions which the legislature has prescribed for the exercise of the extraordinary power given by the act, has not been shown to exist; indeed, has been shown not to exist, and, therefore, the ordinance must be declared unlawful. Nor is it a valid answer to say that, though the annexation of the plaintiff's land to the borough is attempted under an illegal ordinance, the injury resulting from the invasion of his right is very slight as compared with the general benefits that will accrue if the illegal ordinance be allowed to stand, and, therefore, the court of equity ought to withhold its restraining hand.  Practically, that would leave him without remedy, either legal or equitable, and we cannot find from the evidence, that he has precluded himself from invoking the only remedy open to him, by acquiescence or laches.  This being so, it is not, in our judg-

ment, a case for applying the equitable principle as to balance of injury. No such consideration was allowed to prevail in Devore's Appeal or in Pittsburg's Appeal; and if it be allowed to prevail here, a dangerous precedent would be established that might be set up as an excuse for disregarding the salutary provisions of the statute in other cases. While it is often said that an injunction is matter of grace, yet that phrase has acquired a definite meaning, which does not leave the exercise of the power to the mere pleasure or will of the chancellor. "Certainly no chancellor in any English speaking country will at this day admit that he dispenses favors or refuses rightful demands, or deny that when a suitor has brought his cause clearly within the rules of equity jurisprudence, the relief he asks is demandable ex debito justitiæ, and needs not to be implored ex gratia:" Walters v. McElroy, 151 Pa. 549. And in the very recent case of Sullivan v. Jones & Laughlin Steel Co., 208 Pa. 540, Justice Brown said: "It is urged that as an injunction is a matter of grace, and not of right, and more injury will result in awarding than refusing it, it ought not to go out in this case. A chancellor does act as of grace, but that grace sometimes becomes a matter of right to the suitor in his court, and, when it is clear that the law cannot give protection and relief—to which the complainant in equity is admittedly entitled—the chancellor can no more withhold his grace than the law can deny protection and relief, if able to give them. This is too often overlooked when it is said that in equity a decree is of grace, and not of right, as a judgment at law."

The decree is reversed, and the ordinance of the borough of Kutztown, referred to in the plaintiff's bill, which was passed in council February 5, 1909, and approved by the burgess February 8, 1909, is adjudged and decreed to be null, void, and of no effect. And it is also adjudged and decreed that the defendants be perpetually restrained from exercising corporate or municipal authority, in pursuance of the aforesaid ordinance, over any part of the

land described therein and thereby attempted to be annexed to the borough; and that the costs of suit and of this appeal be paid by the borough of Kutztown.