## Canonsburg Borough's Annexation.

*Boroughs—Annexation of territory—"Adjacent" territory—Ordinances— Discretion of borough authorities—Absence of direct benefits to annexed territory—Acts of April 22, 1903, P. L. 247, and May 14, 1915, P. L. 312.*

1. The fact that a section of territory proposed to be annexed to a borough lies in more than one township and is cut through by township lines and by a creek in such manner that the portion of the territory lying on the one side of the township lines and the creek actually touches the borough line, while the portion lying on the other side of the township lines and the creek does not, will not prevent the whole territory from being considered an adjacent unit for purposes of annexation; the creek does not prevent the lands through which it runs from being both legally and in fact adjoining lands, and artificial lines of division (whether township or property lines) are immaterial on the question of adjacency.

2. The fact that a bluff and ravine are located on territory proposed to be annexed to a borough with such effect that one portion of the territory is not accessible from the other by travel in straight lines, and roads or streets to make it so cannot be constructed at reasonable expense, does not interfere with the continuity of the territory in a legal sense so as to prevent its annexation as a whole to the borough.

3. On complaint to the Quarter Sessions under section 9 of article i, chapter 7, of the Borough Code of May 14, 1915, P. L. 312, by persons who consider themselves aggrieved by the enactment of a borough ordinance, the jurisdiction of the court is not limited to a review of the regularity of the procedure connected with the passage of the ordinance; it has the power (vested in the courts of equity prior to, but not since, the going into effect of the Borough Code) to inquire and determine whether the ordinance is so oppressive upon the complainants, or so manifestly unreasonable, that it ought to be held illegal and invalid as an abuse of power because it exceeds the limits within which the law intended that such power should be exercised. Beyond this, however (there being no allegation of corruption, bad faith or fraudulent motives on the part of the borough authorities), the court may not inquire into the merits of the ordinance; it may not substitute its judgment as to whether the enactment will promote the interest of the public for the judgment arrived at by the borough authorities in the honest exercise of the discretionary power vested by law in them to determine this question.

4. Absence of direct benefit to complainants as the result of the annexation to a borough of outlying territory, coupled with an increase in their taxes, and the fact that the nearest school-house in the borough is a half-mile more distant than the township school available to the children residing in the portion of the annexed territory where exceptants' property is located, and the further fact that the availability for building purposes of a portion of the annexed territory might be questionable, as well as the economic practicability of constructing a system of streets, &c., upon and across the same: *Held*, not sufficient, under the circumstances of this case, to justify a finding that the annexation ordinance was either so oppressive upon the complainants or so manifestly or plainly unreasonable as to require that it be stricken down by the court.

5. Where the effect of the annexation to a borough of land in an adjoining township is to withdraw from the jurisdiction of the school district of the township and transfer to the jurisdiction of the borough taxable lands valued in the tax assessment books at $63,300, but it does not appear what increase of millage in the levies of the school district will result; and it is further claimed that the annexation will cause a reduction in the State appropriation for school purposes to the district, but it appears that any loss in this particular will be so small as to be negligible, the ordinance will not be stricken down on complaint of the school district, on the ground that it is oppressive and unreasonable — particularly where the territory to be taken from the school district does not extend beyond what it is reasonable the borough should exercise jurisdiction over for the purpose of controlling the disposition of sewage and other matters.

*Sur* complaint filed by property owners. *Sur* complaint filed by school district. Q. S. Washington Co., Feb. Sess., 1923, No. 262.

*Hamilton & Pipes* and *A. G. Braden*, for exceptants.

*A. L. Zeman*, Borough Solicitor, contra.

4 D. & C.

BROWNSON, P. J., July 9, 1923.—By an Ordinance of the Borough of Canonsburg, approved March 20, 1923, the borough attempted to annex to it certain territory, which included properties owned by the Standard Chemical Company and the W. S. George Pottery Company, complainants, under the provisions of section 18 of article I, chapter III, of the Borough Code of May 14, 1915, P. L. 312. The two manufacturing companies just named have filed a complaint against this action under section 9 of article I, chapter VII, of the same Code, joined in by the administratrix of Joseph M. Flannery.

The amended complaint objects to the regularity and sufficiency of the plans forming a part of the original statement filed by the borough in the office of the Clerk of the Court of Quarter Sessions, in that the plan of the borough limits before the annexation, and the plan thereof as affected by the annexation, do not conform to the statute, this objection being understood to mean that they were not drawn upon the same sheet of paper, with one superimposed upon the other. We need not consider whether this was a valid objection, because, if it were, it has been remedied by an amendment of the statement. We shall consider the other objections to the ordinance made by the complaint.

1. The land embraced in the annexation ordinance consists of a section of territory whereof slightly over four-fifths in area lay in the Township of Chartiers and about one-fifth in the Township of North Strabane. The complainants collectively own all of the land in the latter township, with the exception of three houses and lots. They object that the territory taken from North Strabane is not "adjacent" to the borough within the meaning of the statute, because it is separated therefrom by Chartiers Creek and by unimproved land lying on the farther side of the creek.

The word "adjacent" manifestly was used in the act in such a sense as to require that the territory to be annexed shall adjoin the annexing borough, it not being the intent to authorize a borough to annex land entirely separated from it by intervening territory that would be under the government of another municipality: Camp Hill Borough, 142 Pa. 511. But it is not essential that each individual lot, parcel or tract of land comprised within the annexed territory shall itself adjoin the borough; it is sufficient if that territory, considered as a unit and regarded as a whole, so adjoins: Camp Hill Borough, 142 Pa. 511. The fact that Chartiers Creek, a stream sixty feet wide, flows through it, in this instance, does not prevent the territory from being treated as a unit for present purposes. The creek is the boundary of complainants' lands, and these adjoin, both legally and in fact, the lands of proprietors on the opposite side of the stream embraced in the annexation, which lands connect complainants' properties with the borough line. Nor did the fact that the properties of the latter were in North Strabane Township, while the lands between them and the borough line were in Chartiers Township, prevent the borough from treating and dealing with the territory annexed as a unit for annexation purposes. Just as it is immaterial that artificial property lines may sub-divide a section of territory into individual holdings, so is it with artificial township lines. The statute empowers boroughs to annex "adjacent land" without regard to artificial lines of division which may run through it. There is nothing in the act to interfere with the taking in by the borough authorities of the whole of a continuous area of land, which, in their judgment, ought to be annexed, merely because it happens to lie in more than one township.

2. The complainants further contend that the annexed territory ought not to be treated as a unit because (so the complaint avers) the portion thereof

known as White Lawn Terrace "is not adjacent to the remainder of the territory, . . . being cut off therefrom on the south by a high bluff . . . (and) on the west by a deep ravine or hollow," so that no road or street can be constructed therefrom, at reasonable expense, to the remainder of the territory. White Lawn Terrace is a locality at the northern edge of the annexed territory. It takes its name from a plan of lots which covers the greater part of it. It is largely built up, and about three-fourths of the signers of the annexation petition are freeholders therein. It is a fact that on the south thereof is a high bluff, and on the west is a ravine, so that its inhabitants cannot travel therefrom, in a straight line, to the remainder of the territory in question, and streets to enable them to do so cannot be laid out and constructed at reasonable expense, though they can at present travel to it by means of winding streets, and other similar means of access thereto can be laid out. But it is very clear that, for the purposes of the question we are now considering, the bluff and the ravine do not interfere with the existence of continuity of territory in a legal sense. To warrant the inclusion in one borough of two adjoining portions of land, it is not legally essential that one shall be accessible from the other by travel in straight lines.

3. The complainants ask us to review the discretion exercised by the borough authorities in passing the annexation ordinance, and to hold that such discretion was not wisely and properly exercised. On the other hand, the borough contends that we have no jurisdiction to consider the merits of the action taken in passing the ordinance, and are limited to a review of the regularity of the procedure connected therewith.

Prior to 1903, the courts were in the habit of considering more than the mere regularity of the steps by which ordinances were enacted, when such ordinances were brought before them by complaints filed in the Quarter Sessions: see, *e. g.*, Chartiers Borough's Appeal, 19 W. N. C. 46, where an act done by a borough in the enforcement of a certain ordinance, as against the complainant, was restrained as oppressive. But from the passage of the Act of April 22, 1903, P. L. 247, until 1915, it was generally held that the only remedy whereby to attack the validity of an annexation ordinance upon such grounds was by a bill in equity: Clairton Borough, 34 Pa. Superior Ct. 74; Beaver Borough, 34 Pa. Superior Ct. 467; Fister *v.* Kutztown Borough, 49 Pa. Superior Ct. 483. It was also held that when the remedy in equity was invoked, the Common Pleas could not substitute its discretion in place of that confided by the law to the borough authorities, by determining whether, in the interests of the public, it was or was not expedient that the ordinance in question should be enacted: Fister *v.* Kutztown Borough, 49 Pa. Superior Ct. 483, 487, 488. As, however, there is implied in the grant to boroughs of the delegated power to enact ordinances the limitation that ordinances enacted in pursuance thereof must not be, in a legal sense, unreasonable, the courts might interfere in the case of any ordinance, when shown to be so patently unreasonable and oppressive as to amount to an abuse or excess of power: Mallie *v.* Yeadon Borough, 10 Del. Co. Reps. 521; and see Pittsburgh P. A. Co. *v.* Swissvale Borough, 70 Pa. Superior Ct. 224. The effect of the enactment, as a part of the Borough Code of 1915, of section 9 of article I, chapter VII, was held by the Supreme Court to be that any resort to equity is abolished, and now the exclusive remedy for the purpose of questioning the validity of an ordinance is by complaint to the Quarter Sessions: Parkin *v.* New Kensington Borough, 262 Pa. 433; Whitney *v.* Jersey Shore Borough, 266 Pa. 537. As a result of this ruling, it was said by Keller, J., in Porter Township Annexation, 75 Pa. Superior Ct. 543, 547, 548, that the remedy

4 D. & C.

provided by this section of the Code must be held to cover all the relief which formerly could have been obtainable in equity, and, accordingly, he stated further (pages 549, 550) that a complaint to the Quarter Sessions now "furnishes legal relief for every grievance resulting from a borough ordinance, regulation or act done in virtue of the Act of 1915, by reason of its illegality, oppressiveness or unreasonableness, which was formerly remediable in a court of equity." The effect of Judge Keller's opinion is that, while, "of course (the court) may not establish its judgment or discretion for that of the borough authorities, it is concerned only with the legality, not the wisdom, of their action," yet it may, under the Code, inquire whether the ordinance is illegal and invalid by reason of "oppressiveness or unreasonableness," rendering it an abuse of, and causing it to transcend, the borough's delegated discretionary power.

We think, therefore, that, as the complaint makes no allegation of corruption, bad faith or fraudulent motives on the part of the borough's councilmen and burgess, we have but one question to decide upon this branch of the case. That question is, not whether, if we had been sitting in the place of the council to pass upon the expediency of enacting this ordinance, we should have exercised the discretionary authority to determine whether its enactment would promote the interests of the public in the same way that they did, but whether the ordinance has been shown to be so oppressive upon the complainants, or so manifestly unreasonable, that it ought to be held illegal and invalid as an abuse of power, because it exceeds the limits within which the law intended that such power should be exercised.

The objections which the complaint makes under this head are: *(a)* That complainants will not in any way be benefited by the annexation of their lands; they have, in the manufacturing plants which they maintain thereon, their own apparatus for extinguishing fires, and "a main sewer on the north side of Chartiers Creek could not at any reasonable cost be made available for" their properties on the south side; *(b)* that the nearest school-house in the borough is a half mile more distant than the township school now available for the children residing on the North Strabane part of the annexed territory; *(c)* that the annexation will cause a great increase in the taxes of complainants. Upon the hearing, questions were raised also, and testimony was presented, as to the availability, for building purposes, of the land on either side of the creek, lying along the centre of the annexed territory, and as to the economic practicability of constructing a system of streets, etc., upon and across the same, much of this land being low-lying, subject to flooding, and swampy. A considerable part of it seems now to be used as a dumping-ground for waste products of the industrial plants. In the course of the testimony it was stated that one of the principal objections of the complainants is that, according to their view, they ought not to be taken into the borough except in connection with "Alexander Place," a settlement lying south of, and across the P. C. C. & St. L. railroad tracks from, their properties. It seems that a majority of the people of Alexander Place are not now willing to consent to be annexed, and it contains so many freeholders that annexation without such consent is impracticable. For the borough, testimony was presented as to the considerations which the borough authorities took into account in enacting the ordinance in the form which it bears. Among these are: The fact that the State Board of Health has given the borough orders to construct a sewage-disposal system sufficient to take care of the sewage, not only of the borough itself, but also of the Borough of Houston, which lies about 3000 feet up Chartiers Creek, and of all the intervening territory, in view of which the

Canonsburg Borough's Annexation.

council considered it advisable to annex the valley, on both sides of the creek, up to the Houston line, so as to have full control of the sewerage question; and the fact that, in their opinion, the time has come when Canonsburg must expand, to the west, along the line of this annexation, so that municipal and police control thereof is desirable. Testimony was presented also to show certain benefits to the complainants. It appears that, before the ordinance was passed, the complainants were given a hearing and an opportunity to present their objections before the council.

After an attentive consideration of all the testimony, we are unable to find that the council's conclusion, that in passing this ordinance they were promoting the public welfare, has been shown to be so manifestly and plainly unreasonable as to justify striking down the ordinance upon this ground. The facts that have been shown as to the character of the land, especially the low land, embraced in this territory (alluded to above as averred in the complaint) do not negative the claim of the borough that it is for the best interests of the public that its jurisdiction be extended over this territory. Nor can we find that the annexation is oppressive upon the complainants. It is true, annexation will mean a considerable increase in their taxes; this is an almost invariable result in all cases of annexation to a borough of land located in a township. Presumably, there will be benefits, direct and indirect. But the theoretical basis upon which the law proceeds in permitting an annexation to take place upon petition of a majority of the freeholders is, not that each non-assenting freeholder will receive direct benefits exceeding or equaling the increased cost to him of helping to pay the expense of carrying on the borough government, but that the general welfare of the community, of which he is a part, presumably calls for such action. When this is the case, and the ordinance is passed regularly and in strict accordance with the law, some measure of incidental detriment to particular persons must be submitted to.

One other matter, perhaps, calls for remark. Attention being called to the fact that none of the owners of the land lying south of the creek, in North Strabane, signed the annexation petition, it is argued that, if this annexation bs sustained, then the freeholders of lots located in a suburb of any borough may, if numerous, be able to cause the annexation of farm lands stretching out miles into the country and having no interest in common with the borough. This does not follow. As we have said, ordinances must be reasonable, and there must be reasonable limits to the territory that can thus be forced in. To undertake, in the manner suggested, to compel the owners of distant farms, who have no community interest along with the people of the borough, against their will, to join in helping to pay for maintaining the borough government and constructing municipal improvements voted by the people of the town would appear to violate the rule of reason. But the evidence in the present case convinces us that the Boroughs of Canonsburg and Houston and the intervening territory are industrially, economically and socially substantially one community, and that this annexation, which paves the way for the ultimate consolidation of Canonsburg and Houston, does not transcend the limits of what is reasonable.

On the whole, we do not think the complainants have made out such a case as would warrant our striking down the ordinance.

And now, July 9, 1923, after hearing testimony and arguments of counsel, and due consideration, the complaint filed by the Standard Chemical Company et al. is dismissed, at the cost of the complainants.

4 D. & C.

Canonsburg Borough's Annexation.

*Opinion sur complaint filed by North Strabane Township School District.*

BROWNSON, P. J., July 9, 1923.—All of the objections made to the ordinance of annexation by the complaint of the North Strabane Township School District, except one, have been dealt with in the opinion just filed in the matter of the complaint of the Standard Chemical Company et al., and what has been said therein need not here be repeated.

In addition to objections similar to most of those contained in the other complaint, the school district objects that this annexation will cause it financial loss by greatly reducing the property taxable by it for school purposes. This objection goes to the question whether the ordinance can be pronounced invalid, as being oppressive and unreasonable in its operation toward this complainant.

It is a fact that the effect of the annexation is to withdraw from the jurisdiction of the school district and transfer to that of the borough taxable lands valued in the tax assessment books at $63,300 in the aggregate. What percentage this is of the entire taxable valuation of the district was not shown, and it, therefore, does not appear what increase of millage in the levies of the school district will result.

Although not mentioned in the complaint, the further claim was advanced at the hearing that the annexation will cause a reduction in the State appropriation for school purposes to the district. The evidence in the case indicates that, on the basis of apportionment prescribed by the Act of May 18, 1911, art. XXIII, P. L. 309, 375, any loss in this particular will be so small as to be negligible.

Every annexation to a borough causes a loss of taxable property to the school district out of which the annexed property comes, and the mere fact that some loss of that kind occurs in this case does not render the annexation "oppressive" or "unreasonable" *per se*. Had the southern line of the annexed territory been drawn in such a jagged, irregular and fantastic shape, without reference to any rational boundaries, as to produce indentations reaching out into the territory of North Strabane, manifestly for the purpose of grabbing, for the benefit of the borough, taxable properties which do not properly and fairly belong to the section to be annexed, a situation would be presented raising the question of reasonableness and oppression, as in the case of Mount Joy Borough, 37 Lanc. Law Rev. 517. But that is not the situation here. The line which the ordinance draws through North Strabane is laid along the northern side of the P., C., C. & St. L. Railroad, a rational boundary. It is so drawn as to produce an approximation to symmetry in the western part of the annexed territory, which does not extend beyond so much of the Chartiers Valley as it is reasonable that the borough should exercise jurisdiction over, at that point, for the purpose of controlling the disposition of sewage and other matters.

In view of what we have said, we are unable to find that the school district has been shown to be "aggrieved" in such a manner and to such an extent as to justify us, under the law, in setting the ordinance aside at its instance.

And now, July 9, 1923, after hearing testimony and arguments of counsel, and due consideration, the complaint filed by North Strabane Township School District is dismissed, at the cost of the complainant.

From E. E. Crumrine, Washington, Pa.